IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| vs. | ) | **2:10 CR 00247-WKW-SRW** |
| | ) | |
| | ) | |
| MICHAEL DAVID FAULK | ) | |

## DEFENDANT'S SENTENCING MEMO

1.      Mr. Michael David Faulk, a 42 year old male, pled guilty to counts one and five of an indictment charging him with conspiracy to possess with intent to distribute 5 grams or more of methamphetamine in violation of 21 U.S.C. § 841 (a) (1) and 846; and with possession with intent to distribute 5 grams of more of methamphetamine in violation of 21 U.S.C. § 841 (a) (1). By statute, he faces a sentence of not less than five (5) years no more than forty (40) years on each count, and a fine not to exceed $5,000,000.00 .

2.      The specific conduct for which Mr. Faulk stands convicted has been described in the Presentence Report prepared by the probation officer. For all that appears, Mr. Faulk had no contact at all with illegal activity until he was 20 years of age. Prior to that, he had spent his youth going back and forth between his Mother, who lived in California, and his Father, who lived in Alabama, his parents having divorced shortly after his birth. When he was 20 years of age, his Mother went missing on Easter Sunday and was later found murdered along with his nine (9) year old sister, who suffered from cerebral palsy. It fell to the young Mr. Michael Faulk to go to California and retrieve his Mother's remains. The authorities told him that his sister's remains had probably been

eaten by animals.   This experience doubtless had a severe effect, and caused Mr. Faulk

to spiral downward into depression and drug use, from which he did not emerge until his

arrest in October of 2010.   Since being incarcerated, and while on release awaiting trial

and sentencing, he has completely and totally renounced his former lifestyle and the use

of any drugs. He has now graduated from intensive outpatient substance abuse treatment

through the Chemical Additions Program in Montgomery, and has exhibited a very

positive attitude.

   3.  Remarkably, except for some minor traffic arrests and failures to appear,

Mr. Faulk has no criminal record of any kind prior to his arrest in this case.

   4.  The revised Presentence Investigation Report establishes a total offense

level of 25, and a criminal history category of I.   The guideline imprisonment range is

thus 57 to 71 months (Zone D).   Pursuant to the Plea Agreement, the Government has

moved that Mr. Faulk be given a downward departure of four (4) levels, and that he be

sentenced at the low end of the resulting range, which is 37-46 months.   For the reasons

which will appear in this motion and at his sentencing hearing, Mr. Faulk respectfully

asks the Court to grant him a variance and sentence him to a term of not more than 16

months (Zone C) and apply the provisions of § 5c1.1 (d) (2) of the sentencing guidelines

by allowing him to serve one-half of the minimum term in community confinement or

home detention.

   5.  In determining the sentence in this case, this Court must consider the

following factors: (1) the nature and circumstances of the offense and the history and

characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to

promote respect for the law, and  to provide just punishment for the offense; (3) the

need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims. See U.S.C. § 3553(a); United States v. Talley, 431 F.3d 784, 786 (11th Circuit. 2005).

6.    In Rita v. United States, 551U.S.338, 127 S. Court. 2456, 2474, 167 L.Ed.2d 203 (2007), Justice Stevens wrote in his concurring opinion: "I trust that those judges who have treated the Guidelines as virtually mandatory during the post-Booker interregnum will now recognize that the Guidelines are truly advisory." The decisions in Kimbrough v. United States, 552 U.S. 85, 128 S.Ct. 558, 169 L.Ed.2d. 481 (2007) and Gall v. United States, 552 U.S. 38, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007) have reinforced Justice Stevens' remark.   Sentencing courts clearly have the authority to fashion the sort of sentence that fits the crime and the individual.

7.    In Kimbrough, the court described the role of the Guidelines in relation to 18 U.S.C. § 3553(a):

The statute, as modified by Booker, contains an overarching provision instructing district courts to "impose a sentence sufficient, but not greater than necessary" to accomplish the goals of sentencing, including "to reflect the seriousness of the offense," "to promote respect for the law," "to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a) (2000 ed. Ad Supp. V). The statute further provides that, in determining the appropriate sentence, the court should consider a

number of factors, including "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the sentencing range established" by the Guidelines, "any pertinent policy statement" issued by the Sentencing Commission pursuant to its statutory authority, and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Ibid.* In sum, while the statute still requires a court to give respectful consideration to the Guidelines, see Gall v. United States, *ante,* 128 S. Ct. 586, 169 L. Ed. 2d 445, Booker "permits the court to tailor the sentence in light of other statutory concerns as well," 543 U.S., at 245-246, 125 S. Ct. 738.

Kimbrough, 128 S. Ct. at 570.

8.      In Gall, the court rejected the proportionality test that flowed from the holding of many circuit courts that had held that an extraordinary departure required "extraordinary circumstances." Gall, 128 S.Ct. at 594-595. The court went on to describe the Guidelines, as a "starting point," but also emphasized the need for an "individualized assessment"

As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553 (a) factors to determine whether they support the sentence requested by a party. In doing so, he may not presume that the Guidelines range is reasonable . See *id.*, at, 127 S. Court. 2456, 168 L. Ed. 2d 203. He must make an individualized assessment based on the facts presented. If he decides that an outside-

Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing. Id., at, 127 S. Ct. 2456, 168 L. Ed. 2d 203. Gall, 128 S.Ct. at 596-597.

9.    In this case, a sentence of imprisonment such as that called for by the guidelines would be "greater than necessary" to provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant. The defendant's rehabilitation through intensive substance abuse treatment made available to him through the Court means that he is far less likely to re-offend. Statistics suggest that the recidivism rate is less for drug offenders who receive treatment while in prison or jail, and even less for those treated outside of a prison setting. See U.S. v. Perella, 273 F. Supp. 2d 162, 164 (D. Mass. 2003) citing Lisa Rosenblum, Mandating Effective Treatment for Drug Offenders, 53 Hastings L. J. 1217, 1220 (2002). Offender age is a pertinent characteristic. Data suggests that younger offenders are more likely to recidivate than older offenders. See the criminal history computation of the Federal Sentencing Guidelines at p. 16 (2004).

http://www.ussc.gov/Research/Research_Publications/Recidivism/200405_Recidivism_C
riminal_History.pdf

10.    A further reason to impose a sentence below the guidelines relates to the suffering experienced by Mr. Faulk, through no fault of his own, following the murder of

his mother and younger sibling.  In U.S. v. Wyatt, 442 F. Supp. 2d 298, 299 (W.D. Va. 2006) the District Court varied from a guideline sentence in the 121 to 151 month range down to a sentence of 60 months in methamphetamine manufacturing case.   The defendant had suffered depression and anxiety for 10 years due to the accidental death of her younger brother and 2 close friends.   Sentencing Judge found that the defendant's untreated and long standing drug abuse, relative culpability, youth and family support "make a significant difference in the defendant's case in light of the factors set forth in § 3553 (a)."

11.     Finally, although as pointed out above, the defendant is not a youth, this would be his first encounter with prison.  Generally, a lesser prison term is sufficient to deter one who has not been suspect to prior lengthy incarceration.  See U.S. v. Baker, 445 F. 3d 987 (7th Circuit 2006) affirming a non-guideline sentence of 78 months from 108 months for defendant convicted of distributing child porn, justified in part by the sentencing judge's finding that prison would mean more to this defendant then one who had been imprisoned before, which resonated with the goal of "just punishment in § 3553 (a) (2) (a) and "adequate deterrence" in § 3553 (a) (2) (b).

12.     The "over-arching provision" of 18 U.S.C. § 3553(a) is to "impose a sentence sufficient, but not greater than necessary" to meet the goals of sentencing established by Congress.  Kimbrough v. United States, 128 S.Ct. 558, 570 (2007).  Even when the Sentencing Guidelines were mandatory, sentencing courts were to treat those before them as individuals. *See* Koon v. United States, 518 U.S. 81, 113 (1996) ("It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case a unique study in the

human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."). Decisions in <u>Booker, Rita, Kimbrough,</u> and <u>Gall</u> and the command of the statute to impose a sentence that is "sufficient, but not greater than necessary," have given sentencing courts greater latitude to impose a sentence that fits the crime and the person before the court. Given these circumstances of this case, Faulk submits that a sentence of not more than 16 months would be reasonable and "sufficient."

Respectfully submitted this 29th day of August, 2011.

WILLIAM R. BLANCHARD
Attorney for the Defendant

**OF COUNSEL:**

BLANCHARD LAW OFFICES
505 South Perry Street
Post Office Box 746
Montgomery, Alabama 36101-0746
(334) 269-9691

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA      )
                              )
                              )
vs.                           )          2:10 CR 00247-WKW-SRW
                              )
                              )
MICHAEL DAVID FAULK           )

## CERTIFICATE OF SERVICE

I hereby certify that on August 2 9, 2011, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system which will send notification of such

filing to the following: AUSA A. Clark Morris, and I hereby certify that I have mailed by

United States Postal Service the document to the following non-CM/ECF participants:

n/a.

Respectfully submitted,


/s/William R. Blanchard
William R. Blanchard
BLANCHARD LAW OFFICES
505 South Perry Street
Post Office Box 746
Montgomery, Alabama 36101-0746
Office: (334) 269-9691
Fax:    (334) 263-4766
(BLA029)